UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

MARCOS ALBERTO ORTIZ DIAZ, Petitioner,

v. Civil Action No. 4:26-cv-643-RGJ

ARTHUR F. MAGLINGER, et al., Respondents.

* * * * *

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] filed by Petitioner Marcos Alberto Ortiz Diaz ("Diaz"), *pro se*. On October 8, 2026, the Court set a show cause hearing for November 3, 2026. [DE 4]. The United States as counsel for the Federal Respondents[1] ("Respondents") responded [DE 6], and Diaz replied. [DE 11]. On November 2, 2026, the Court granted the United States's motion to cancel the hearing and remanded the matter. [DE 10, DE 12]. These matters are ripe. For the reasons below, Diaz's Petition for Writ of Habeas Corpus [DE 1] is **GRANTED**.

## I. BACKGROUND

Diaz is a native and citizen of Cuba. [DE 1-2 at 12]. He entered the United States on or about December 21, 2021, at the International Bridge in Del Rio, Texas, where he was booked and released on an Order of Recognizance. [DE 6-1 at 49]. Diaz was also served with a Notice to Appear ("NTA"), charging him as an alien neither admitted nor paroled and removeable under 8 U.S.C. § 1182(a)(6)(A)(i). [DE 8-2 at 50–51].[2] On June 12, 2026, Diaz was arrested in

[1] The Office of the United States Attorney entered an appearance in this case "on behalf of the Federal Respondents." [DE 3]. 28 U.S.C. § 517 allows them to make appearances in court to attend to the United States' interests.
[2] The NTA ordered Diaz to appear before a United States Department of Justice ("DOJ") immigration judge on November 17, 2026. [DE 6-2 at 51].

Louisville, Kentucky, for driving under the influence and other related traffic infractions. [DE 6-1 at 49]. On June 15, 2026, U.S. Immigration and Customs Enforcement ("ICE") terminated Diaz's release, and he was turned over to their custody pursuant to a detainer. [*Id.*; DE 6-4 at 57]. At that time, he was also served with a Warrant for Arrest of Alien, [DE 6-5 at 58], and a Notice of Custody Determination ("NCD") informing him that he was being detained by the Department of Homeland Security ("DHS") pursuant to 8 U.S.C. § 1226. [DE 6-6 at 59]. On June 15, 2026, Diaz signed the NCD, acknowledging its receipt—and requesting review of the custody determination by an immigration judge. [*Id.*].

On September 21, 2026, an IJ determined that Diaz is removable, denied his request for asylum, denied withholding of Removal under INA§ 241(b)(3) and the Convention Against Torture, and ordered Petitioner's removal to Cuba. [DE 7-1 at 67–71]. Diaz appealed. [DE 1 at 4–5; DE 1-2 at 12]. He is currently detained at the Daviess County Detention Center in Owensboro, Kentucky, and filed this Petition on October 6, 2026, requesting "release from physical custody," or "alternatively[,] grant such constitutionally adequate individualized custody process as the Court determines necessary." [DE 1 at 7].[3]

## II. DISCUSSION

Diaz asserts that his continued detention is "being maintained under an improper statutory detention framework" and violates his due process rights. [DE 1 at 6]. He alleges that he is being detained unlawfully, subject to mandatory detention, under 8 U.S.C. § 1225(b) (2) (A). [*Id.* at 7]. He asserts that he is properly detained, if at all, under Section 236 of the Immigration and

[3] In his Memorandum of Law in Support of his Petition, Diaz states that he does not seek a bond hearing as relief from this Court. [DE 1-2 at 14–15]. Construing his *pro se* filings liberally and reading them together, the Court understands Diaz to challenge his continued detention and seek release, rather than a court-ordered bond hearing. Because the Court orders his release, it need not resolve any ambiguity concerning his request for a bond hearing.

Nationality Act ("INA"), codified at 8 U.S.C. § 1226(a). [*Id.*]. Section 1226(a) provides that noncitizens in removal proceedings may be detained but are eligible for release on bond. *See* 8 U.S.C. § 1226(a). If § 1226(a) applies, then a noncitizen is entitled to an individualized custody redetermination hearing. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1)).

Respondents assert that the Court should deny Diaz's Petition because he is properly detained under § 1226(a) and has not been deprived of any due process, as he "has not requested the relief available to him under *Lopez-Campos*." [DE 6 at 43, 47].

**A. Diaz is detained under Section 1226(a).**

In *Lopez-Campos v. Raycraft*, the Sixth Circuit held that mandatory detention of certain noncitizens "already present in the United States" who were not "seeking admission" was unlawful, and that the petitioners were properly detained, if at all, pursuant to § 1226(a). 175 F.4th 713, 732 (6th Cir. 2026) (explaining "§ 1226 applies to aliens already present in the United States" and "creates a default rule for those aliens . . . ."). Here, the parties do not dispute that: (1) Diaz was a noncitizen already present in the United States when taken into ICE custody, and (2) § 1226 should govern his detention. [DE 1-2 at 13; DE 6 at 43]. Nor do they dispute that under Section 1226 he is entitled to an individualized custody redetermination hearing. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1)). Diaz believes that he is being held under mandatory detention pursuant to § 1225(b) because he has not received an individualized custody redetermination hearing. [DE 1 at 7]. Respondents assert that Diaz "wrongly claims [they] have deprived him of the opportunity to seek release from custody on bond," and that all he must do is ask. [DE 6 at 42]. Despite Respondents' representations to the contrary, the NCD attached as Respondents Exhibit Six [DE 6-6] to their response, shows that on June 15, 2026, upon entering ICE custody, Diaz did ask. [DE 6-6 at 59]. He checked the box on the document that reads "I do request an immigration judge review of this custody determination" and signed it. [DE 6-6 at 59].

Respondents' assertion that Diaz "simply hasn't sought the relief available to him," [DE 6 at 43], is contradicted by its own filings in this Court. [*See* DE 6-6 at 59].

Having determined that Diaz's detention is governed by § 1226(a), he asked for an individualized custody redetermination in June 2026, and to-date has not received one, Respondents' arguments as to due process and Diaz's "failure to exhaust his administrative remedies" are futile. [*See* DE 6 at 43–44 ("[Diaz] is not deprived of any due process right . . . [he] has available to him the right to seek custody redetermination from an immigration judge . . . [he] simply hasn't sought the relief available to him. . . . The Court should also deny [Diaz]'s petition because he failed to exhaust his administrative remedies. [He] merely needs to file a motion for custody redetermination and a bond hearing will be provided. [Diaz] has failed to avail himself of that relief, despite it being available to him.")]. Like the petitioners in *Lopez-Campos*, Diaz has "a liberty interest to be free from detention." *Lopez-Campos*, 175 F.4th at 734. Deprivation of that interest "without bond under § 1226(a) [is] a deprivation of liberty that violates [his] due process rights" and makes his continued detention unlawful. *Id.*

**B. Remedy**

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) ("Release from detention is the typical remedy for unlawful executive detention.") (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention.").

Release is not the only remedy, however. Historically, "common-law habeas corpus was, above all, an adaptable remedy," whose "precise application and scope changed depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The writ's "most extensive" role at common law was "in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Id.* at 780. In *Boumediene*, the Supreme Court made clear that, "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

The Court concludes that release is necessary because Diaz is currently being held in mandatory detention and has been for almost five months. As such, his continued dentition, however transitory, is unlawful. Accordingly, the Court will order Petitioner's release. This is in line with the remedies fashioned by other district courts in this circuit. *See, e.g.*, *Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering release and requiring a bond hearing before further re-detention); *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-ATC, 2025 WL 3565348, at *7 (W.D. Tenn. Dec. 12, 2025) (ordering release pending a bond hearing). Moreover, "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" where the government has articulated no legitimate interest in detaining individuals who are neither flight risks nor dangers to the community. *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release

appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention."). Here, Respondents have not articulated any basis for finding that Diaz poses a flight risk or danger to the community. *Monge-Nunez*, 2025 WL 3565348, at *7. They do not even acknowledge, much less address, their own filing showing that he requested a bond hearing. [DE 6; DE 6-6 at 59]. Thus, Respondents have failed to articulate any legitimate interest in his continued detention. *Monge-Nunez*, 2025 WL 3565348, at *7.

However, the Court will not require Respondents to hold a bond hearing following Diaz's release. *But cf. Monge-Nunez*, 2025 WL 3565348, at *7. Nevertheless, should Respondents decide to re-detain Diaz, absent a material change in circumstances, they must provide him with a bond hearing pursuant to Section 1226(a).

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Diaz's Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** the following:

(1) Respondents are directed to release Petitioner Diaz immediately because of the unlawful detention in violation of his due process rights;

(2) the United States must certify compliance with the Court's order by a filing on the docket **by November 5, 2026**;

(3) Respondents' Motion to Strike Exhibit 7 [DE 7] is **GRANTED**. The original Exhibit 7 [DE 6-7] shall be stricken from the record, and substituted with Exhibit 7 [DE 7-1]; and

(4) Petitioner Diaz's Motion for Spanish Interpreter at the **November 3, 2026,** hearing [DE 9], is **DENIED as moot**.

Rebecca Grady Jennings, District Judge
United States District Court

Date: November 3, 2026

Cc: Counsel of record